AO 93 (Rev. 12/09) Search and Seizure Warrant (USAO CDCA Rev. 01/2013) ORIGINAL

# UNITED STATES DISTRICT COURT

for the
Central District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A compact disc labeled "2660-LA-3508283, PAULCIANCIA@HOTMAIL.COM, SEARCH WARRANT RETURN," in the custody of the FBI located in Long Beach, CA

Case No. 15-1559M

FILED
2015 OCT 15 PM 3
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES
BY

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property. Such affidavit is incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before 14 days from the date of its issuance *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for ______ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of ________.

Date and time issued: 8/20/15 2:50 p.m. Patrick J. Walsh
*Judge's signature*

City and state: Los Angeles, California Patrick J. Walsh, U.S. Magistrate Judge
*Printed name and title*

AUSA: Melissa Mills

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 15-1559M | 8/28/2015 11:36 AM | N/A - CD TO BE SEARCHED IS ALREADY IN THE POSSESSION OF THE FBI. |

*Inventory made in the presence of:* N/A

*Inventory of the property taken and name of any person(s) seized:*

[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

228 EMAILS SEIZED FROM EMAIL ACCOUNT PAULCIANCIA@HOTMAIL.COM, PURSUANT TO A SEARCH WARRANT ISSUED ON 08/20/2015.

***Certification*** (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: 10/15/2015

Sharon V. Marks

*Executing officer's signature*

SHARON V. MARKS, SPECIAL AGENT

*Printed name and title*

AUSA: Melissa Mills

# AFFIDAVIT

I, Special Agent Stephen Khoobyarian, being duly sworn, hereby state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and I have been so employed for over ten years. I am currently assigned to the FBI's Long Beach Residence Agency Joint Terrorism Task Force (JTTF), where I investigate international terrorism, domestic terrorism, and other violations of Federal law, including those that occur within the airport environment and on board aircraft.

2. For the reasons set forth in the prosecutors' memorandum to the Court, I make this affidavit in support of an application for a warrant to search the digital device described in Attachment A to the search warrant application, specifically a compact disc labeled 2660-LA-3508283, PAULCIANCIA@HOTMAIL.COM, SEARCH WARRANT RETURN[1] (the "SUBJECT DEVICE") produced to the FBI by Microsoft Corporation pursuant to a federal search warrant, Case No. 13-2921M. The SUBJECT DEVICE contains the contents of the email account paulciancia@hotmail.com, believed to be used by PAUL ANTHONY CIANCIA, as described in the application for a search warrant issued by the Honorable Charles Eick, United States Magistrate Judge, on November 5, 2013. That search

---

[1] The data was produced by Microsoft via e-mail and saved to the SUBJECT DEVICE by the FBI.

warrant, its attachments, and the supporting affidavit are attached hereto as Exhibit 1. For the reasons set forth in that affidavit, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1114 (murder of a federal officer), 18 U.S.C. § 37 (violence at an international airport), and 18 U.S.C. §§ 924(j)(1), (c)(1)(A)(iii) (discharge of a firearm during a crime of violence causing death) will be found on the SUBJECT DEVICE, specifically, the items described in Attachment B to the search warrant application. Attachments A and B are incorporated herein by reference.

STEPHEN KHOOBYARIAN
Special Agent, FBI

Subscribed and sworn to before
me on August 20, 2015

HONORABLE PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following digital device provided by Microsoft Corporation on November 6, 2013, to the FBI, pursuant to the search warrant in case number 13-2921M, issued on November 5, 2013, and containing information associated with the account identified as paulciancia@hotmail.com: A compact disc labeled "2660-LA-3508283, PAULCIANCIA@HOTMAIL.COM, SEARCH WARRANT RETURN."

## ATTACHMENT B

### I. ITEMS TO BE SEIZED

1. The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1114 (murder of a federal officer), 18 U.S.C. § 37 (violence at an international airport), and 18 U.S.C. §§ 924(j)(1), (c)(1)(A)(iii).

a. Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts;

b. Information relating to CIANCIA's attitude or animosity toward the Transportation Security Administration or other governmental entities;

c. Information reflecting CIANCIA's membership in, collaboration with, or communications with any extremist or terrorist groups or entities;

d. Information relating to the purchase, transfer, acquisition, or procurement of weapons, ammunition, tactical gear, bombs and other incendiary devices, gunpowder, chemicals, and bomb-making materials;

e. Information relating to the source or purpose of any funding, transfers, or payments related to the acquisition of any of the above-referenced items;

f. Information reflecting weapons or tactical

training or instruction;

g. Information relating to law enforcement tactics or techniques, or how to avoid the same;

h. Information relating to possession, manufacturing, or distribution of weapons, explosive materials, explosive devices, and chemicals;

i. Writings, manifestos, or other documentary evidence of intent or motive to violate 18 U.S.C. § 1114 or 18 U.S.C. § 37, or otherwise to cause harm to United States governmental agencies or employees;

j. Any entertainment and information media including but not limited to video games, music, movies, books, magazines, pamphlets, and other publications that reflect anti-government ideologies or violent activities;

k. Information relating to researching, planning, coordinating, or executing a violent attack;

l. All user connection logs and transactional information of all activity relating to the paulciancia@hotmail.com account, including but not limited to all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations;

m. All subscriber information pertaining to the paulciancia@hotmail.com account, including but not limited to

the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

## II. SEARCH PROCEDURE FOR SUBJECT DEVICE

2. In searching the SUBJECT DEVICE or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") shall complete the search as soon as is practicable but not to exceed 60 days from the date of issuance of the warrant. If additional time is needed, the government may seek an extension of this time period from the Court on or before the date by which the search was to have been completed.

b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant. The search team may subject all of the data contained in the SUBJECT DEVICE

capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the list of items to be seized.

c. When searching the SUBJECT DEVICE pursuant to the specific search protocols selected, the search team shall make and retain notes regarding how the search was conducted pursuant to the selected protocols.

d. If the search team, while searching the SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of the SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

e. If the search determines that the SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

3. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

# EXHIBIT 1

AO 93 (Rev. 12/09) Search and Seizure Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

for the

Central District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with the account identified as paulciancia@hotmail.com that is stored at premises controlled by Microsoft Corporation located at 1 Microsoft Way, Redmond, Washington 98052

Case No. 13-2921M

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Western District of Washington *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before 14 days from the date of its issuance *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for ______ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of __________.

Date and time issued: 11-5-13 5:10 pm

CHARLES F. EICK
*Judge's signature*

City and state: Los Angeles, California

Charles F. Eick, U.S. Magistrate Judge
*Printed name and title*

JSA: Melissa Mills

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant ~~and inventory~~ left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

**Certification** (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: ____________________

____________________________________
Executing officer's signature

____________________________________
Printed name and title

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with the account identified as paulciancia@hotmail.com that is stored at premises controlled by Microsoft Corporation, a company that accepts service of legal process at 1 Microsoft Way, Redmond, Washington, 98052.

ATTACHMENT B

ITEMS TO BE SEIZED

I. SEARCH PROCEDURE

1. The search warrant will be presented to personnel of Microsoft Corporation (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2. To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3. The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the agent who serves the search warrant.

4. With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant. The search shall extract and seize only the specific items to be seized under this warrant (see Section III below). In conducting this search, the

search team shall take notes regarding how it conducts the search.

5. If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6. The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant. If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7. Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.

8. The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant

to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9. Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II. INFORMATION TO BE DISCLOSED BY THE PROVIDER

10. To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a. All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, including but not limited to:

i. All e-mails associated with the SUBJECT ACCOUNT, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii. All records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT, including instant messages or chats, address books, contact and buddy lists, calendar data, pictures, notes, and files.

iii. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a, including but not limited to all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

c. All subscriber information pertaining to the SUBJECT ACCOUNT, including but not limited to the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11. For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a. All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1114 (murder of a federal officer), 18 U.S.C. § 37 (violence at an international airport), namely:

i. Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii. Information relating to CIANCIA's attitude or animosity toward the Transportation Security Administration or other governmental entities;

iii. Information reflecting CIANCIA's membership in, collaboration with, or communications with any extremist or terrorist groups or entities;

iv. Information relating to the purchase, transfer, acquisition, or procurement of weapons, ammunition, tactical gear, bombs and other incendiary devices, gunpowder, chemicals, and bomb-making materials;

v. Information relating to the source or purpose of any funding, transfers, or payments related to the acquisition of any of the above-referenced items;

vi. Information reflecting weapons or tactical training or instruction;

vii. Information relating to law enforcement tactics or techniques, or how to avoid the same;

viii. Information relating to possession, manufacturing, or distribution of weapons, explosive materials, explosive devices, and chemicals;

ix. h. Writings, manifestos, or other documentary evidence of intent or motive to violate 18 U.S.C. § 1114 or 18 U.S.C. § 37, or otherwise to cause harm to United States governmental agencies or employees;

x. i. Any entertainment and information media including but not limited to video games, music, movies, books, magazines, pamphlets, and other publications, that reflect anti government ideologies or violent activities;

xi. Information relating to researching, planning, coordinating, or executing a violent attack.

b. All records and information described above in Sections II.10.b and II.10.c.

IV. <u>PROVIDER PROCEDURES</u>

12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant. The PROVIDER shall send such information to:

SPECIAL AGENT ZACHARIAH FISHER
FEDERAL BUREAU OF INVESTIGATION
11000 WILSHIRE BOULEVARD, SUITE 1700
LOS ANGELES, CA 90024
TEL: (310) 996-4985
FAX: (310) 473-9302
Zachariah.fisher@ic.fbi.gov

13. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14. IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

for the
Central District of California

FILED
CLERK U.S. DISTRICT COURT
NOV - 5 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information associated with the account identified as paulciancia@hotmail.com that is stored at premises controlled by Microsoft Corporation located at 1 Microsoft Way, Redmond, Washington 98052

Case No. 13-2921M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Washington, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section(s)* | *Offense Description* |
|---|---|
| 18 USC Section 1114 (murder of a federal officer)<br>18 USC Section 37 (violence at an international airport) | See attached Affidavit |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

FBI Special Agent Zacharia Fisher
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-5-13

CHARLES F. EICK
*Judge's signature*

City and state: Los Angeles, California

Charles F. Eick, U.S. Magistrate Judge
*Printed name and title*

AUSA: Melissa Mills

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

This warrant applies to information associated with the account identified as paulciancia@hotmail.com that is stored at premises controlled by Microsoft Corporation, a company that accepts service of legal process at 1 Microsoft Way, Redmond, Washington, 98052.

## ATTACHMENT B

## ITEMS TO BE SEIZED

### I. SEARCH PROCEDURE

1. The search warrant will be presented to personnel of Microsoft Corporation (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2. To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3. The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II below to the agent who serves the search warrant.

4. With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant. The search shall extract and seize only the specific items to be seized under this warrant (see Section III below). In conducting this search, the

search team shall take notes regarding how it conducts the search.

5. If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6. The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant. If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7. Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.

8. The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant

to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

9. Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II. INFORMATION TO BE DISCLOSED BY THE PROVIDER

10. To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a. All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, including but not limited to:

i. All e-mails associated with the SUBJECT ACCOUNT, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii. All records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT, including instant messages or chats, address books, contact and buddy lists, calendar data, pictures, notes, and files.

iii. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a, including but not limited to all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

c. All subscriber information pertaining to the SUBJECT ACCOUNT, including but not limited to the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

## III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11. For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a. All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1114 (murder of a federal officer), 18 U.S.C. § 37 (violence at an international airport), namely:

i. Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii. Information relating to CIANCIA's attitude or animosity toward the Transportation Security Administration or other governmental entities;

iii. Information reflecting CIANCIA's membership in, collaboration with, or communications with any extremist or terrorist groups or entities;

iv. Information relating to the purchase, transfer, acquisition, or procurement of weapons, ammunition, tactical gear, bombs and other incendiary devices, gunpowder, chemicals, and bomb-making materials;

v. Information relating to the source or purpose of any funding, transfers, or payments related to the acquisition of any of the above-referenced items;

vi. Information reflecting weapons or tactical training or instruction;

vii. Information relating to law enforcement tactics or techniques, or how to avoid the same;

viii. Information relating to possession, manufacturing, or distribution of weapons, explosive materials, explosive devices, and chemicals;

ix. h. Writings, manifestos, or other documentary evidence of intent or motive to violate 18 U.S.C. § 1114 or 18 U.S.C. § 37, or otherwise to cause harm to United States governmental agencies or employees;

x. i. Any entertainment and information media including but not limited to video games, music, movies, books, magazines, pamphlets, and other publications, that reflect anti government ideologies or violent activities;

xi. Information relating to researching, planning, coordinating, or executing a violent attack.

b. All records and information described above in Sections II.10.b and II.10.c.

IV. <u>PROVIDER PROCEDURES</u>

12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant. The PROVIDER shall send such information to:

SPECIAL AGENT ZACHARIAH FISHER
FEDERAL BUREAU OF INVESTIGATION
11000 WILSHIRE BOULEVARD, SUITE 1700
LOS ANGELES, CA 90024
TEL: (310) 996-4985
FAX: (310) 473-9302
Zachariah.fisher@ic.fbi.gov

13. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14. IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

# A F F I D A V I T

I, Special Agent Zachariah Fisher, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I am a Special Agent employed by the Federal Bureau of Investigation ("FBI"), and have been so employed since September 2012. I am currently assigned to the FBI Los Angeles Field Office ("LAFO") Joint Terrorism Task Force (JTTF). My duties at the JTTF include investigating violations of the laws of the United States, as stated in Title 18, United States Code. I am currently assigned to investigate threats to the critical infrastructures within the LAFO's area of responsibility. I have received both formal and informal training from the FBI and other entities regarding this subject matter. In preparing this affidavit, I consulted with fellow law enforcement agents with extensive expertise in computer investigations and behavioral analysis.

2. From my training and experience, and from consultation with other law enforcement officers, I also know that individuals who plan or commit violence against governmental targets commonly use the Internet in general, and email specifically, to research potential targets and methodologies, plan activities, and communicate with others about intentions

and activities. In such cases, a footprint of some or all of this research, planning, and communications activity may be recovered from the individual's e-mail account.

3. From my training and experience, and from consultation with other law enforcement agents, I know that individuals with animus against governmental organizations who express or manifest a desire to inflict violence using firearms and other individual weapons are often also involved with other instruments of destruction such as explosives and chemical and/or biological weapons. Those items listed below as items to be seized are the types of items that I know, from my training and experience, that a person involved in violence against governmental targets would be likely to have information about in his e-mail account.

4. I also know from my training and experience, and from consultation with other law enforcement officers, that literature, movies, music, video games, and other forms of entertainment and information media can serve as an accelerant for an individual's anti-government ideologies as the individual moves from thought to action.

5. The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. Because this affidavit is submitted for the limited

purpose of supporting a request for the Court to authorize a search warrant for the SUBJECT ACCOUNT, as described below, I have not set forth each and every fact learned during the course of this investigation, nor have I summarized each and every fact deemed pertinent to the case. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested search warrant.

**PURPOSE OF AFFIDAVIT**

6. I make this affidavit in support of an application for a warrant pursuant to Title 18, United States Code, Section 2703 to compel the following Internet Service PROVIDER ("ISP") to provide subscriber information, records, and the contents of wire and electronic communications pertaining to the following account:

> Microsoft Corporation, a provider of electronic communication and remote computing services (the "PROVIDER"), located at 1 Microsoft Way, Redmond, Washington, 98052, for the account identified as paulciancia@hotmail.com (the "SUBJECT ACCOUNT"), believed to be used by PAUL ANTHONY CIANCIA ("CIANCIA").[1]

---

[1] Because this Court has jurisdiction over the offense under investigation, it may issue the warrant to compel the PROVIDER pursuant to Title 18, United States Code, Section 2703(a). See Title 18, United States Code, Section 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- any district court of the United States (including a magistrate judge of such a court) or any United States court of appeal that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the

7. There is probable cause to believe that the contents of the wire and electronic communications pertaining to the SUBJECT ACCOUNT are evidence, fruits and instrumentalities of criminal violations of the following criminal activity: (1) murder of a federal officer, in violation of 18 U.S.C. § 1114; and (2) violence at an international airport, in violation of 18 U.S.C. § 37. Specifically, there is probable cause to believe that the user of the SUBJECT ACCOUNT, whom I believe to be CIANCIA, committed violence at an international airport and murdered a federal officer, and that evidence of those crimes will be found on the SUBJECT ACCOUNT.

**PROBABLE CAUSE**

8. On November 2, 2013, United States Magistrate Judge Jacqueline Chooljian signed a complaint, attached hereto as Exhibit 1, alleging that CIANCIA violated 18 U.S.C. § 1114 (Murder of a Federal Officer) and 18 U.S.C. 37 (Violence at International Airports) on November 1, 2013, by approaching a Transportation Security Administration ("TSA") security checkpoint at Los Angeles International Airport armed with an assault rifle; firing his weapon at a uniformed TSA screener then on duty, fatally wounding the screener; and firing toward at least two other TSA screeners and one civilian passenger,

---

provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

wounding them.

9. I know from communications with other law enforcement agents that CIANCIA's current roommate confirmed that he occasionally communicated with CIANCIA via the SUBJECT ACCOUNT, including as recently as May 28, 2013. The current roommate further confirmed that the SUBJECT ACCOUNT was the only e-mail account from which the roommate received e-mails from CIANCIA, and the only e-mail account of which the roommate was aware. The FBI is currently investigating another e-mail account that CIANCIA may have used in addition to the SUBJECT ACCOUNT.

10. On November 1, 2013, the FBI served a grand jury subpoena on the PROVIDER addressed to Hotmail.com, Subpoena Compliance, 1065 La Avenida, Building 4, Mountain View, CA 94043, Fax 425-708-0096. On November 4, 2013, when the FBI called the PROVIDER to inquire as to the progress of the return, the PROVIDER advised the FBI that the subpoena was rejected because it should have been addressed to Microsoft Corporation, Subpoena Compliance, 1065 La Avenida, Building 4, Mountain View, CA 94043, Fax 425-708-0096. That same day, the FBI re-served the subpoena with the requested provider name, but the PROVIDER advised that compliance would take approximately ten days.

<u>BACKGROUND REGARDING E-MAIL AND THE PROVIDER</u>

11. In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-

mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name hotmail.com (like the SUBJECT ACCOUNT). Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

12. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as instant messages or chats, address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), notes, and other files, on servers maintained and/or owned by the PROVIDER. In my training and experience, evidence of who was using an e-mail account may be found in such information.

13. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name,

physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

14. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNT.

15. In my training and experience, e-mail account users will sometimes communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

16. I know from my training and experience that the complete contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time. E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider. They may also be used by multiple people. Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account. Only by piecing

together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over all information associated with the SUBJECT ACCOUNT without a date restriction for review by the search team.

17. Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

18. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

19. As set forth in Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNT as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNT.

b. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and its contents -- may be deleted. As a consequence, there is a risk that the only record of the contents of an e-mail account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her e-mail account. Preserving evidence, therefore, would ensure that the government can satisfy its Brady obligations and give the defendant access to evidence that might be used in his or her defense.

V.

**REQUEST FOR NON-DISCLOSURE**

20. Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNTS, of the existence of the warrant because there is reason to believe that such notification will result in: (1) flight from prosecution; (2) destruction of or tampering with evidence; (3) intimidation of potential witnesses; or (4) otherwise seriously jeopardizing the investigation. The full extent of the current investigation described above is not public, and I know, based on my training and experience, that criminals often will destroy digital evidence if the perpetrator learns of an investigation.

VI.

CONCLUSION

21. Based on the foregoing, I request that the Court issue the proposed search warrant.

/s/

ZACHARIAH FISHER
Special Agent, FBI

Subscribed and sworn to before
me on November 5, 2013

CHARLES F. EICK

HONORABLE CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

COPY

AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

FILED
CLERK, U.S. DISTRICT COURT
NOV 2 2013
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

| UNITED STATES DISTRICT COURT | | | CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>PAUL ANTHONY CIANCIA | | | DOCKET NO.<br><br>MAGISTRATE'S CASE NO. | |
| Complaint for violation of Title 18, United States Code, Sections 1114 and 37 | | | | |
| NAME OF MAGISTRATE JUDGE<br>HONORABLE JACQUELINE CHOOLJIAN | | UNITED STATES MAGISTRATE JUDGE | | LOCATION<br>Los Angeles, California |
| DATE OF OFFENSE<br>11/1/13 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) | | |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1114]

On or about November 1, 2013, in Los Angeles County, within the Central District of California, defendant PAUL ANTHONY CIANCIA killed and attempted to kill officers and employees of the United States and of an agency in the executive branch of the United States government, namely, employees of the Transportation Security Administration, while such officers and employees were engaged in and on account of the performance of official duties.

[18 U.S.C. § 37]

On or about November 1, 2013, in Los Angeles County, within the Central District of California, defendant PAUL ANTHONY CIANCIA unlawfully and intentionally, using a firearm, performed an act of violence at Los Angeles International Airport, an airport serving international civil aviation, that caused and was likely to cause serious bodily injury and death.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| | |
|---|---|
| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**STEPHEN J. KHOOBYARIAN** /S/<br>OFFICIAL TITLE<br>Special Agent – Federal Bureau of Investigation |
| Sworn to before me and subscribed in my presence, | |
| SIGNATURE OF MAGISTRATE JUDGE[1]<br>JACQUELINE CHOOLJIAN | DATE<br>November 2, 2013 |

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Melissa Mills ext. 0627 REC: Detention

# A F F I D A V I T

I, Stephen J. Khoobyarian, being duly sworn, hereby depose and state the following:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and I have been so employed for over eight years. I am currently assigned to the FBI's Long Beach Residence Agency Joint Terrorism Task Force (JTTF), where I investigate international terrorism, domestic terrorism, and other violations of Federal law, including those that occur within the airport environment and on board aircraft.

2. This affidavit is in support of a complaint charging PAUL ANTHONY CIANCIA ("CIANCIA") with violating Title 18, United States Code, Section 1114: Murder of a Federal Officer; and Title 18, United States Code, Section 37: Violence at International Airports; on November 1, 2013, at the Los Angeles International Airport ("LAX"), located in Los Angeles, California, in the Central District of California.

3. The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show that there is probable cause for the requested complaint and does not purport to set forth all of my knowledge or investigation into this matter.

4. Title 18, United States Code, Section 1114 prohibits, in pertinent part, "kill[ing] . . . any officer or employee of the United

States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties."

5. Title 18, United States Code, Section 37 prohibits, in pertinent part, the following conduct: "unlawfully and intentionally, using any device, substance, or weapon - perform[ing] an act of violence at an airport serving international civil aviation that causes or is likely to cause serious bodily injury . . . or death."

6. According to eyewitnesses and video surveillance footage, on November 1, 2013, at approximately 9:20 a.m., CIANCIA entered Terminal 3 at LAX and approached the Transportation Security Administration ("TSA") checkpoint. CIANCIA pulled a Smith & Wesson .223 caliber M&P-15 assault rifle out of his bag and fired multiple rounds at point-blank range at a TSA officer who was then on duty and in uniform, wounding the officer. CIANCIA began to walk up an escalator, looked back at the wounded officer, who in video appeared to move, and returned to shoot the wounded officer again. The TSA officer was fatally wounded. CIANCIA then fired his weapon on at least two other uniformed, on-duty TSA employees and one civilian passenger, all of whom sustained gunshot wounds. CIANCIA was pursued and shot by a sergeant and an officer of the Los Angeles Airport Police. Multiple terminals were evacuated and air traffic into and out of LAX was halted, and air travel across the globe was disrupted.

7. I learned from other law enforcement agents that from a bag that CIANCIA carried with him at the scene, agents recovered a handwritten letter, signed by CIANCIA, stating that CIANCIA had "made the conscious decision to try to kill" multiple TSA employees. Addressing TSA employees, the letter stated that CIANCIA wanted to "instill fear in your traitorous minds." CIANCIA's possessions on the scene also included five magazine clips of ammunition for his assault rifle.

8. From my training and experience, I know that LAX is an airport serving international civil aviation. TSA is a federal agency within the Department of Homeland Security, in the executive branch of the federal government, charged with securing the airports of the United States and screening all commercial airline passengers and baggage. TSA officers are employees of the United States government.

///

///

///

9. Based on the foregoing, I believe that there is probable cause to believe that PAUL ANTHONY CIANCIA violated Title 18, United States Code, Section 1114: Murder of a Federal Officer; and Title 18, United States Code, Section 37: Violence at International Airports.

/s/

STEPHEN J. KHOOBYARIAN
Special Agent-FBI

Sworn and subscribed to before
me this 2nd day of November, 2013.

JACQUELINE CHOOLJIAN

UNITED STATES MAGISTRATE JUDGE